IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re:  Shelly LeAnn Torres, | ) | |
| | ) | Case No. 19-15022-JDL |
| Debtor. | ) | Chapter 13 |

## 21ST MORTGAGE CORPORATION'S
## MOTION FOR ORDER TERMINATING AUTOMATIC STAY AND DIRECTING ABANDONMENT OF PROPERTY AND BRIEF;
## MOTION FOR WAIVER OF 14 DAY STAY PER RULE 4001(a)(3); and
## NOTICE OF OPPORTUNITY FOR HEARING AS TO THE DEBTOR AND NON FILING CO-DEBTOR

1. This motion is filed pursuant to Rules 4001(a), 6007(b) and 9014, Fed.R. Bankr. P., with this Court having jurisdiction over this matter pursuant to 28 U.S.C. §1334 and 11 U.S.C. §§362, 521 and 554.

2. On or about June 8, 2012, Shelly L. Torres aka Shelly LeAnn Torres ("Debtor") entered into a Security Agreement (the "Contract") for the purchase of the following:

**2012 FLEETWOOD MOBILE HOME
VIN:  FLE240TX1230686A**

**(the "Mobile Home")**

A true and correct copy of the Agreement is attached hereto as Exhibit A, and incorporated by reference.  A true and correct copy of the lien is attached hereto as Exhibit B, and incorporated by reference.

3. 21st Mortgage Corporation ("21st") is the holder of the note and held the note prior to, at commencement, and subsequent to the initiation of this bankruptcy proceeding and the filing of this Motion.

4. 21st has complied with all of the terms, conditions precedent and provisions of the note and is duly empowered to and has standing to bring this Motion.

5. Creditor has complied with all of the terms, conditions precedent and provisions of the Mortgage and is duly empowered to and has standing to make this motion.

6. Default has been made upon the Note and Mortgage in that installments due have not been made, and, therefore, Plaintiff is entitled to lift the stay and foreclose its Mortgage on the premises and to have the same sold to satisfy the indebtedness secured thereby, together with all legal and necessary expenses related thereto.

7. The account is past due for two (2) months, for the January 15, 2020 and February 15, 2020 payments.

8. Debtor is a debtor under Title 11, having filed her original bankruptcy petition on December 16, 2019.

9. John T. Hardeman, the duly appointed trustee for the bankruptcy estate, is a party in interest to these proceedings.

10. Pursuant to 11 U.S.C. §362, it is appropriate for the Court to terminate the automatic stay and enter an order directing abandonment of the Collateral.

11. 21st respectfully requests the 14-day period staying the execution of any order granting relief from an automatic stay provided in rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure be waived for the reason that the Collateral is depreciating in value.

12. Upon entry of an order granting the relief requested herein, any conversion of this matter to another chapter will not act as reinstatement of the stay.

13. The Co-Debtor, Christopher B. Torres, ("Co-Debtor") who is not a party to this bankruptcy, may claim some right, title or interest in and to the Collateral.

14. Pursuant to 11 U.S.C. §1301(a) 21st is stayed from acting to collect a consumer debt from a non-filing Co-Debtor unless and until the automatic stay is terminated as to his interest.

15. 21st requests the automatic stay be terminated as to the Co-Debtor, Christopher B. Torres.

16.     Pursuant to 11 U.S.C. §§362 and 1301, it is appropriate for the Court to terminate the automatic stay and enter an order directing abandonment of the Collateral as to the Co-Debtor

WHEREFORE, 21st prays that this Court terminate and modify the automatic stay of 11 U.S.C. §362, as that may affect this or any other Creditor with an interest in the Collateral and Property, and further requests the Court to order abandonment of the Collateral and Property by the trustee to allow 21st to proceed to recover the Collateral and Property.  21st further prays that the automatic stay be terminated to allow the Creditor to send to the Debtor any and all notices required by state and/or federal law, regulation or statute in this action, and to pursue all remedies not inconsistent with Title 11 U.S.C.

## NOTICE OF OPPORTUNITY FOR HEARING

**YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THIS DOCUMENT CAREFULLY AND CONSULT YOUR ATTORNEY ABOUT YOUR RIGHTS AND THE EFFECT OF THIS DOCUMENT.**  IF YOU DO NOT WANT THE COURT TO GRANT THE REQUESTED RELIEF, OR YOU WISH TO HAVE YOUR VIEWS CONSIDERED, YOU MUST FILE A WRITTEN RESPONSE OR OBJECTION TO THE REQUESTED RELIEF WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF OKLAHOMA, 215 DEAN A. MCGEE AVENUE, OKLAHOMA CITY, OKLAHOMA 73102 NO LATER THAN 14 DAYS FROM THE DATE OF FILING THIS REQUEST FOR RELIEF FOR THE DEBTOR AND 20 DAYS FROM THE DATE OF FILING THIS REQUEST FOR RELIEF FOR THE NON FILING CO-DEBTOR.  YOU SHOULD ALSO MAIL A FILE-STAMPED COPY OF YOUR RESPONSE OR OBJECTION TO THE UNDERSIGNED MOVANT/MOVANT'S ATTORNEY [AND OTHERS WHO ARE REQUIRED TO BE SERVED] AND FILE A CERTIFICATE OF SERVICE WITH THE COURT.  IF NO RESPONSE OR OBJECTION IS TIMELY FILED, THE COURT MAY GRANT THE REQUESTED RELIEF WITHOUT A HEARING OR FURTHER NOTICE.  **THE 14 AND 20 DAY PERIODS INCLUDE THE THREE (3) DAYS ALLOWED FOR MAILING PROVIDED FOR IN RULE 9006(f).**

        Respectfully submitted,

        *s/Gretchen M. Latham*
        Gretchen M. Latham- OBA No. 17523

        Of the Firm:
        PHILLIPS MURRAH P.C.
        Corporate Tower, 13th Floor
        101 North Robinson Avenue
        Oklahoma City, OK 73102
        Telephone: (405) 235-4100
        Facsimile: (405) 235-4133
        gmlatham@phillipsmurrah.com
        ATTORNEY FOR 21ST

## CERTIFICATE OF SERVICE

    I certify that on February 28, 2020, a copy of the Motion was forwarded via U.S. Mail, first class, postage prepaid and properly addressed to all parties on the attached matrix, and via regular U.S. Mail to:

    Christopher B. Torres
    12116 Skyway Ave.
    Oklahoma City, OK  73162

        By: *s/Gretchen M. Latham*
        Gretchen M. Latham, OBA #17523

## CONSUMER LOAN NOTE, SECURITY AGREEMENT AND DISCLOSURE STATEMENT

| LENDER: 21st Mortgage Corp. 620 Market St. Suite 100 Knoxville, TN 37902 | NMLS No. 2280 | Reference No: |
|---|---|---|

| Borrower's Name: CHRISTOPHER B TORRES | Co-Signer's Name: |
| Co-Borrower's Name: SHELLY L TORRES | Co-Signer's Name: |
| Borrower's Address: 12116 SKYWAY AVE OKLAHOMA CITY OK 73162 | Co-Borrower's Address: 12116 SKYWAY AVE OKLAHOMA CITY OK 73162 |

**THIS AGREEMENT IS SUBJECT TO ARTICLE 3, TITLE 15A OF THE OKLAHOMA STATUTES ANNOTATED**

In this Consumer Loan Note ("Note"), "Borrower" refers to all persons who sign this Note as "Borrower" and "Co-Borrower", jointly and severally. "Lender" refers to 21st Mortgage Corporation ("21st Mortgage"), and its successors and assigns. Other capitalized terms are defined in the disclosures on this page and in the section of this Note titled, "Itemization of Amount Financed." Borrower promises to advise Lender in writing of any change of Borrower's mailing address while this Note is in effect. Lender should send any papers or notices concerning this Note to Borrower's mailing address. On the date of this Note, Borrower finances with Lender the manufactured home described below, together with the related services, furnishings, equipment, appliances and accessories included with the manufactured home (collectively, "Manufactured Home").

Description of Manufactured Home: ☒ New   ☐ Used

| MANUFACTURER: FLEETWOOD | YEAR: 2012 | ADDITIONAL ACCESSORIES AND FURNISHINGS: ITEM AND SERIAL NO. | |
|---|---|---|---|
| APPROX. LENGTH: 76 | APPROX. WIDTH: 16 | | |
| SERIAL NO. | FLE240TX12-30686A | | |
| SERIAL NO. | | | |
| SERIAL NO. | | | |
| SERIAL NO. | | | |

**PROMISE TO PAY:** Borrower promises to pay Lender the "Unpaid Balance" as listed under the "Itemization of Amount Financed" plus interest. When Borrower signs this Note, Borrower will also pay Lender any "Prepaid Finance Charge" shown in the "Itemization of Amount Financed." Borrower authorizes Lender to include the Prepaid Finance Charges in the Unpaid Balance. Lender will compute and charge interest on the unpaid amount of the Unpaid Balance from the Note date at the yearly rate of 12.99% (the "Note Rate"). When Lender calculates interest, every year shall have 360 days and every month shall have 30 days. Borrower promises to pay interest at the Note Rate on the unpaid amount of the Unpaid Balance of this Note until it is paid in full. Interest after the final scheduled maturity date on this Note, however, shall not exceed the maximum rate allowed by state law.

**Borrower's Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 170 | $317.81 | Monthly, beginning 07/15/2012 |

BORROWER FURTHER PROMISES to pay Lender monthly payments in the number and amounts of payments shown in Borrower's Payment Schedule. Borrower's first payment will be due on the first date shown in Borrower's Payment Schedule, and subsequent payments will be due on the same day of each month after that.
LENDER WILL APPLY EACH PAYMENT RECEIVED AS OF ITS SCHEDULED DUE DATE. If on the final scheduled payment due date, Borrower still owes amounts under this Note, Borrower will pay those amounts in full on that date (the "Maturity Date"). Borrower will make all payments to 21st Mortgage Corp., 620 Market St. Suite 100, Knoxville, Tennessee 37902, or any other address to which Lender directs Borrower to send Borrower's payments.

**SECURITY INTEREST:** To secure payment of all sums due or which become due under this Note, and Borrower's performance of all other terms of the Note, Borrower grants Lender a first priority security interest in (1) the Manufactured Home, and all accessions, attachments, accessories, replacements and additions to the Manufactured Home, whether added now or later; (2) the "Property" described in any mortgage or deed of trust Borrower gives to Lender; (3) Borrower's rights to refunds of premiums for and payments under, and proceeds of any insurance or any extended warranty or service contract purchased with the proceeds of this Note; (4) any amounts held in escrow by Lender for Borrower; and, (5) proceeds and products of all of the foregoing (collectively, the "Collateral"). Lender's security interest shall remain in effect until Borrower pays, in full, all amounts due under the Note. Despite any other provision of the Note, however, Lender is not granted, and does not have, a non-purchase money security interest in household goods, to the extent such a security interest is prohibited by applicable law. Borrower will pay any filing or recording fees necessary for Lender to obtain and hold a first priority security interest. To the extent allowed by law, Borrower also agrees to pay any release, discharge or termination fees, after the Borrower pays the Note in full. Borrower agrees to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect Lender's security interest in the Manufactured Home. Borrower authorizes Lender to sign Borrower's name to any financing statement or application or other document necessary to perfect the security interest granted by Borrower herein. If Lender is taking a security interest in real property, such interest is reflected in a mortgage or deed of trust signed in conjunction with this Note.

Borrower's Initials: _[signed]_
Co-Borrower's Initials: _[signed]_

Page 1 of 10

OK Rev. 10/12/2010

TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid should Borrower make all payments as scheduled. |
|---|---|---|---|
| 13.79% | $30,332.73 | $23,694.97 | $54,027.70 |

INTEREST RATE AND PAYMENT SUMMARY

| | Rate & Monthly Payment |
|---|---|
| Interest Rate | 12.99% |
| Principal + Interest Payment | $317.81 |
| Est. Taxes + Insurance (Escrow) | $115.03 |
| Total Est. Monthly Payment | $432.84 |

Security: Borrower gives Lender a security interest in:
☒ The Manufactured Home, which will be located at 6108 DIXIE ST KINGSTON OK 73439
☐ Real property located at

Late Charge: If a payment is more than 15 days late, Borrower will be charged 5% of the amount of such payment, not to exceed $23.00. Other references in this Note to the "Late Charge" refer to the amount

Prepayment: If Borrower pays off early, Borrower will not have to pay a penalty.

Assumption: Someone buying the Manufactured Home may be allowed to assume the remainder of Borrower's obligations under this Note on the original terms only if such person is approved by Lender.

Other Information: Refer to the rest of this Note for additional information about nonpayment, default, any required payment in full before the scheduled date and prepayment refunds and penalties.

MDIA Refinancing Warning: There is no guarantee that Borrower will be able to refinance the loan to obtain a lower interest rate and/or payment.

**PROPERTY INSURANCE**
PROPERTY INSURANCE ON THE MANUFACTURED HOME IS REQUIRED FOR THE TERM OF THIS NOTE. BORROWER HAS THE RIGHT TO OBTAIN SUCH INSURANCE FROM ANYONE AUTHORIZED BY LAW TO SELL IT AND IS REASONABLY ACCEPTABLE TO LENDER. Borrower elects to finance through Lender the below listed property insurance of the specified type, term and premium.

| Hazard Insurance Provider | Term | Premium |
|---|---|---|
| None | | |

* A separate flood insurance policy may or may not be reflected in the information above or financed as part of the loan. Borrower should refer to the appropriate insurance policy documents for more details.

Borrower's signature below indicates Borrower's election to finance the above listed property insurance for the type, term and premium shown.

Borrower's Signature _____   Co-Borrower's Signature _____

6/8/12

THIS SPACE LEFT INTENTIONALLY BLANK

Borrower's Initials ___
Co-Borrower's Initials ___

Page 2 of 10

OK Rev. 10/12/2010

**ITEMIZATION OF AMOUNT FINANCED:**

| | |
|---|---|
| 1. Cash Price | |
|    a. Manufactured Home ** | $35,500.00 |
|    b. Sales Tax | $576.88 |
|    c. Total Cash Price (1a plus 1b) | $36,076.88 |
| 2. Down Payment | |
|    a. Cash Down Payment | $12,626.91 |
|       Trade-in ( ) | |
|       Length: 0 Width: 0 | |
|       Liens 0 | |
|    b. Net Trade-in Allowance | 0 |
|    c. Total Down Payment (2a plus 2b) | $12,626.91 |
|    d. Manufacturer's Rebate | $0.00 |
| 3. Unpaid Cash Price for Purchase or Refinance | |
|    a. Unpaid Portion of Cash Price (1c minus 2c and 2d) | $23,449.97 |
|    OR | |
|    b. For a Refinanced Loan, Amount Paid to Others | |
| 4. Amounts paid to others on Borrower's behalf | |
|    a. To Insurance Companies ** | |
|       i. Property Insurance ** | |
|       ii. | |
|    b. To Public Officials | |
|       i. Certificate of Title | $30.00 |
|       ii. Filing/Recording Fees ** | $0.00 |
|    c. To TAG FEE | $215.00 |
|    d. | |
|    e. | |
|    f. | |
|    g. | |
|    h. | |
|    i. | |
|    j. | |
|    Total of All Amounts ((a) through (j)) | $245.00 |
| 5. Prepaid Finance Charges (Includes items paid to third parties; items may be financed in part and paid in cash in part) | |
|    a. Financed | |
|       i. To Flood Certification Fee | $8.00 |
|       ii. To Loan Origination Fee | $947.79 |
|       iii. | |
|       iv. | |
|       v. | |
|       vi. | |
|    b. Paid in Cash | |
|       i. | |
|       ii. | |
|       iii. | |
|       iv. | |
|       v. | |
|       vi. | |
| 6. Unpaid Balance (3a + 3b + 4 + 5(a)) | $24,650.76 |
| 7. Prepaid Finance Charges (total of all items in 5) | $955.79 |
| 8. Amount Financed (6 minus 7) | $23,694.97 |

** Lender may retain, or receive, a portion of these amounts

Security interest termination, release, discharge or satisfaction fees paid upon termination will vary based upon applicable law. This fee is not paid by Borrower at closing.

Borrower's Initials
Co-Borrower's Initials

Page 3 of 10

OK Rev. 10/12/2010

**BORROWER'S RIGHT TO PREPAY:** BORROWER MAY PREPAY ANY AMOUNTS DUE UNDER THIS NOTE AT ANY TIME WITHOUT PENALTY. A Principal only payment is known as a "Prepayment." Lender will not treat a payment as a Prepayment unless Borrower previously made all monthly payments of principal and interest and fully paid and satisfied all other obligations due under this Note. If Borrower meets these conditions, Borrower may make a Prepayment by sending such Prepayment in accordance with the instructions provided by Lender in a monthly billing statement, or payment coupon, or otherwise as directed by Lender. Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. If Borrower (1) prepays this Note in full, or (2) defaults and fails to cure the default and Lender demands payment of the entire balance due on this Note, no portion of any Prepaid Finance Charge will be refunded.

**PROPERTY INSURANCE:** Borrower is required to insure the Manufactured Home against physical damage, including loss by fire, hazards included within the term "extended coverage," and any other hazards for which Lender requires insurance, for the term of the Note at Borrower's expense. If Borrower financed the premium, the premium is financed over the term of the Note, even though the term of insurance is less than the Note term. The Borrower must obtain the types and amounts of insurance coverage required by Lender, including flood insurance if applicable. The insurance policy must contain a loss payable clause protecting Lender (as Lender's interest may appear), and provide for at least a 10 day notice of cancellation to Lender. Borrower agrees to provide written proof of such coverage to Lender within 5 days of Lender's request. <u>BORROWER HAS THE RIGHT TO CHOOSE THE ENTITY THROUGH WHICH THE PROPERTY INSURANCE IS OBTAINED.</u> Lender reserves the right to refuse to accept, for reasonable cause, an insurer chosen by the Borrower. If Borrower's insurance coverage expires or is canceled prior to payment in full of this Note, Borrower must obtain coverage in the amounts, types, and for the periods that Lender requires at Borrower's expense for the remaining term of the Note. Lender's property insurance coverage requirements can change during the term of the Note. Should Borrower fail to provide or maintain property insurance or fail to provide Lender with satisfactory evidence of coverage, or should the property insurance, for any reason, not protect Lender's interests, Lender, in its sole discretion, may obtain property insurance that meets its requirements, but is under no legal obligation to do so. Before obtaining insurance in these circumstances, Lender will, in good faith, attempt to inform Borrower in writing of the need for Borrower to obtain property insurance and/or to provide evidence thereof. If obtained by Lender, Lender will add the cost of the insurance to the amount due under the Note. That amount will become due and payable upon demand by the Lender, in payments added to Borrower's scheduled payments, or as otherwise required by Lender. Lender may charge Borrower interest on such cost at the Note Rate, unless prohibited by applicable law. The property insurance obtained by Lender may have material differences from insurance initially financed under the Note or from insurance obtained by the Borrower initially or at any time during the term of the Note. Such insurance may be significantly more expensive to Borrower than if Borrower obtained the insurance. Consequently, Lender makes the following disclosures to Borrower: (a) The property insurance that Lender obtains is intended solely to protect the Lender's interest hereunder, and Lender may not obtain coverages beyond those to insure loss of or damage to the Manufactured Home; in particular, such insurance may not provide coverage for personal effects, adjacent structures, medical expenses or personal liability; additionally, such coverage may not insure the Manufactured Home in an amount equal to the Unpaid Balance due under this Note and, consequently, in the event of loss or damage, the insurance may not pay the full amount of the Unpaid Balance of the Note; (b) If Lender obtains this insurance due to Borrower default, Borrower acknowledges and agrees that Lender has no duty to obtain insurance on behalf of Borrower which is the least expensive, or which has a competitive marketplace premium or any other particular feature or special benefit; (c) Lender or its affiliates may be reimbursed for expenses and may profit from taking action to cure Borrower's default by providing and maintaining such insurance; (d) Borrower's execution of this Note authorizes Lender to provide third parties with any information necessary to obtain insurance on the Manufactured Home and monitor the status of such insurance; and (e) Borrower may, as stated above, at any time, including after Lender obtains property insurance on Borrower's behalf, obtain insurance through an agent or insurer of Borrower's choice. Upon so doing, Borrower may provide Lender with sufficient evidence of insurance coverage, at which time, Lender will cancel the insurance coverage it obtained on Borrower's behalf, obtain any refund due on the unearned portion of the premium, and apply the refund to the Unpaid Balance of the Note. Property insurance proceeds (whether such insurance has been obtained by Borrower or Lender) shall be applied to the restoration or repair of the Manufactured Home, if it is economically feasible and does not lessen the Lender's security interest in the Manufactured Home. If this is not the case, or if the insurer determines that the Manufactured Home represents a total loss under the coverage, Lender will apply such insurance proceeds to reduce all amounts owing under this Note, whether or not such amounts are due and payable. Borrower authorizes Lender to (a) adjust or settle Borrower's claim for loss under such insurance; (b) sign Borrower's name to any check, draft or other documents necessary to obtain such insurance proceeds; and (c) hold such insurance proceeds until Lender has the opportunity to inspect the Manufactured Home and ensure that work to restore or repair the Manufactured Home is completed to Lender's satisfaction, without incurring an obligation to pay Borrower earnings or interest on such proceeds. Lender may disburse proceeds in a single payment or a series of payments and Borrower authorizes any insurer to make such payment directly to Lender. If insurance proceeds paid to Lender do not satisfy all amounts Borrower owes to Lender under this Note, Borrower is responsible for paying the balance.

Borrower's Initials
Co-Borrower's Initials

**ESCROW ITEMS:** To the extent permitted by law, Lender may, at Lender's option, require Borrower to make payments in addition to those set forth in Borrower's Payment Schedule ("Escrow Payments") which Lender will collect and hold for (1) the payment of property insurance premiums required under this Note, (2) the payment of taxes and assessments, and (3) other items which might attain priority over Lender's security interest (each, an "Escrow Item"). Lender will use Borrower's Escrow Payments to pay Escrow Items as they come due. **THE BORROWER'S PAYMENT SCHEDULE IN THIS NOTE DOES NOT INCLUDE ANY AMOUNT TO BE PAID UNDER ANY SUCH ESCROW ACCOUNT.**

**SERVICING CHARGES:** Borrower agrees to pay all reasonable charges for Lender's performance of additional services requested by Borrower in connection with the servicing of this Note, to the extent permitted by applicable law.

**ADVANCES TO PROTECT THE COLLATERAL:** If Borrower fails to pay for required insurance, if Borrower fails to pay park or lot rent (and any other related charges), if Borrower fails to satisfy taxes, assessments, or other liens or encumbrances against the Manufactured Home, if Borrower fails to keep the Manufactured Home in good repair or if Borrower fails to make any other payments required by this Note or applicable law, Lender may (but is not required to) make such repairs or payments as Lender chooses. Lender will add any and all such payments and any amounts Lender pays to protect or enforce Lender's security interest to the amount Borrower owes Lender under this Note, and all such amounts will be secured by the Collateral. At Lender's sole option, Lender may (1) demand that Borrower repay these amounts immediately, or (2) add these amounts to Borrower's regularly scheduled payments, or (3) add these amounts as additional installments due, or (4) add these amounts to the final installment due on this Note. Unless prohibited by law, Borrower agrees to pay interest at the Note Rate on any amounts that Borrower does not repay immediately. Borrower hereby waives any right to advance written notice of Lender's performance of Borrower's covenants as described under 14A Oklahoma Statutes Annotated § 2-206.

**DELINQUENCY AND DEFAULT:** Time is of the essence. If a payment is more than 15 days late, Borrower agrees to pay the Late Charge indicated in the "Truth in Lending Disclosures" section of this Note. If any check, negotiable instrument of withdrawal, electronic payment draft or any other instrument is dishonored by Borrower's financial institution, Borrower will pay a fee of $20.00, in addition to being required to make payment on the item. Borrower will be in default under this Note if: (1) Borrower fails to make any payment when due; (2) Borrower otherwise fails to perform any of Borrower's obligations under this Note or under any mortgage or deed of trust which secures this Note; (3) Borrower dies or becomes legally unable to manage Borrower's affairs; (4) any statement of fact, representation or warranty Borrower makes to Lender in Borrower's application for credit, any other document submitted to the Lender or signed by Borrower in connection with this Note, or in any Note document is false, misleading, inaccurate, or incomplete; or (5) Borrower files a petition in bankruptcy, or a party files a petition in bankruptcy against Borrower. In the event of Borrower's default, Lender will give Borrower notice of the default and right to cure the default ("Notice of Default"). Borrower is not entitled to a Notice of Default if Borrower abandons or voluntarily surrenders the Manufactured Home, or if other extreme circumstances exist. Borrower is not, under any circumstances, entitled to a Notice of Default more than twice in any one year period. The Notice of Default will allow Borrower at least 30 days to cure the default. If Borrower does not cure the default within that period after the postmarked date of the Notice of Default, or if a Notice of Default is not required to be sent, Lender may (1) accelerate the maturity of the debt and require Borrower to pay Lender the entire remaining balance and all other amounts due under the Note, (2) require Borrower to make the Manufactured Home available to Lender, (3) take legal action against Borrower, (4) repossess the Manufactured Home, (5) enforce such rights and remedies available to Lender under the Uniform Commercial Code and other applicable law, and (6) foreclose on the real property, if applicable. Lender, at its sole option, may elect to sever and remove the Manufactured Home from any real property where it is located, regardless of whether the real property secures this Note. In the event of default, Borrower also agrees to pay Lender's expenses for (a) reasonable attorney's fees permitted under law after referral to an attorney who is not a salaried employee of the Lender; (b) court costs and disbursements; and (c) costs of repossessing the Manufactured Home including the costs of storage, reconditioning, and resale. Before Lender sells the Manufactured Home, Borrower can get the Manufactured Home back if Borrower either (1) pays off the Note by paying Lender the entire remaining balance and all other amounts due under the Note (redeem), or (2) cures the default by paying Lender the amounts which are past due, including Late Charges (reinstate). Regardless of whether Borrower redeems or reinstates, and before Borrower can get the Manufactured Home back, Borrower must also (1) pay Lender the cost of taking, storing and redelivering the Manufactured Home and other expenses Lender incurs; (2) pay Lender all other charges and other expenses provided for under this Note; (3) pay any amounts advanced by Lender to protect the Collateral, without regard to any agreement to repay such amounts advanced on a periodic basis, including but not limited to unpaid insurance premiums, park or lot rent, taxes, assessments or similar items; and (4) cure any other defaults. Borrower's rights to redeem and/or reinstate end upon sale of the Manufactured Home unless otherwise required by law. All rights and remedies under this Note and any mortgage or deed of trust executed herewith are cumulative, but Borrower's right to a written notice of default and 30 days to cure, as set forth in this Note, shall not be affected by any inconsistent provision of any mortgage or deed of trust. Any personal property of Borrower's located in or attached to the Manufactured Home and not subject to Lender's security interest may be held by Lender without liability if the Lender repossesses the Manufactured Home. Borrower will be deemed to have waived any claim to such personal property unless written demand by certified mail is made upon Lender within twenty-five (25) days after repossession. If Borrower fails to give Lender such written demand, Lender may dispose of such personal property.

Borrower's Initials
Co-Borrower's Initials

INFORMATION SHARING: Lender may investigate Borrower's credit history and credit capacity in connection with establishing, modifying, extending, and/or enforcing Borrower's account, and share information about Borrower and Borrower's account with credit reporting agencies and others as allowed by law. Lender may also verify Borrower's employment, income, assets, and debts; and anyone receiving a copy of this Note is hereby authorized to release such information to Lender. Borrower authorizes Lender to release to third parties any information necessary to monitor the status of insurance on Borrower's Manufactured Home, and to obtain the insurance described in this Note. If Borrower's Manufactured Home is on rented property or property that is not owned by Borrower, Borrower authorizes Lender and Borrower's landlord (or the property owner) to exchange information as to Borrowers obligations to Lender under this Note and the status of such obligations, information relating to Lender's security interest in Borrower's Manufactured Home, and information regarding the lease or arrangement between Borrower and landlord (or the property owner), as well as the obligations and status of such obligations to landlord (or the property owner). Whether or not the Borrower rents the Manufactured Home to a party in accordance with the terms of this Note, Borrower authorizes Lender and Borrower's renter to exchange information as to Lender's security interest in Borrower's Manufactured Home and the rental agreement or arrangement, as well as to the obligations, and the status of such obligations of Borrower to Lender under this Note. This provision also applies to any Co-Signer who executes this Note.

OTHER TERMS AND CONDITIONS: Borrower will not move the Manufactured Home without Lender's prior written consent. Borrower will not sell the Manufactured Home without Lender's prior written consent. Borrower agrees that the Manufactured Home is, and shall remain, during the term of this Note, personal property. Unless Lender gives prior written consent, Borrower shall not allow the Manufactured Home to become a part of real estate or to lose its status as personal property under applicable law. Borrower will not encumber or abandon the Manufactured Home, nor allow any lot lien, landlord lien, or similar lien, which may by law be superior to Lender's security interest, to encumber the Manufactured Home. Borrower will not use the Manufactured Home for illegal activity. Borrower will not use the Manufactured Home for business or hire, or rent it to another party, without obtaining Lender's prior written consent. Borrower will pay promptly all taxes, assessments, and any liens and encumbrances on the Manufactured Home. Borrower will notify Lender promptly of any loss or damage to the Manufactured Home, as well as any condemnation, confiscation or theft of the Manufactured Home. Upon Lender's request, Borrower will promptly provide Lender with proof satisfactory to Lender that: (1) Borrower has the insurance required under this Note; (2) Borrower has paid all taxes assessed against the Manufactured Home; (3) Borrower has paid all park or lot rent (and any other related charges) due; (4) Lender holds the only lien against the Manufactured Home; (5) the Manufactured Home is in good condition and repair; and (6) Borrower has complied with all of the promises Borrower made in this Note. Lender may inspect the Manufactured Home at any time. If Borrower is married, and residing in a community property state, both Borrower's community property and separate property are liable for all payments under this Note. Borrower waives all marital rights, homestead exemption and other exemptions relating to the Collateral. Borrower will cooperate with Lender regarding any requests after closing to correct any errors with respect to this Note or the transaction and agrees to provide any and all additional documentation deemed necessary by Lender to complete this transaction. Lender may rely on a telecopy, photocopy, or electronically imaged copy of this Note as if it were an original, including use in legal proceedings or arbitrations. Borrower acknowledges that any broker or other third party used to facilitate this transaction may receive compensation from Lender for its services.

ASSUMPTION: Someone buying the Manufactured Home may assume the remainder of Borrower's obligations under this Note on the original terms only if such person is approved by Lender.

ASSIGNMENT: Lender may assign this Note to any person or entity. All rights granted to Lender under this Note shall apply to any assignee of this Note.

WAIVER AND MODIFICATION: Lender's waiver of any default shall not constitute a waiver of any other default. The procurement of required property insurance, or the payment of taxes, or other liens, or other charges, by Lender shall not be a waiver of Lender's right to accelerate the maturity of this Note and declare default herein. To the extent permitted by law, Borrower agrees to give up Borrower's rights to require Lender to do certain things. Borrower does not give up any rights that are provided in this Note. Unless the law or this Note provides otherwise, Lender is not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time, or manner; or, (3) give notice that Lender intends to make, or is making, this Note immediately due.

WARRANTIES: LENDER MAKES NO WARRANTIES ON THE MANUFACTURED HOME, AND EXPRESSLY EXCLUDES ANY EXPRESS OR IMPLIED WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, UNLESS GIVEN TO BORROWER BY LENDER IN WRITING AT THE TIME OF SALE. BORROWER AGREES THAT THE YEAR OF THE MANUFACTURED HOME IS FOR IDENTIFICATION PURPOSES ONLY AND MAY NOT BE THE BASIS FOR A WARRANTY OR OTHER CLAIM AGAINST LENDER. THE ABOVE DISCLAIMERS DO NOT AFFECT ANY WARRANTIES COVERING THE MANUFACTURED HOME THAT MAY BE PROVIDED BY THE MANUFACTURER, OTHER THIRD PARTIES, OR THAT ARE REQUIRED BY LAW.

Borrower's Initials
Co-Borrower's Initials

OK Rev. 10/12/2010

**VALIDITY AND EFFECTIVENESS:** Wherever possible each provision of this Note shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Note is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, however, the remainder of such provision or the remaining provisions of this Note shall not be invalidated. This Note shall be governed both as to issues of formation and performance by the laws of the State of Oklahoma and applicable federal law. This Note shall have no effect until and unless signed by Borrower and Lender. Lender does not intend to charge or collect any interest, charge, or fee greater than the law allows. If Lender charges or collects any amount greater than what the law allows, Lender will apply the excess to the Unpaid Balance and any other amounts due under the Note and shall refund any excess. Lender will treat any amount applied to the Unpaid Balance as a partial Prepayment.

**ENTIRE AGREEMENT:** This Note, any separate escrow agreement, and any mortgage or deed of trust, together, the "Entire Agreement Documents," shall constitute the entire agreement between Borrower and Lender. To the extent permitted by applicable law, Borrower agrees that no representations, oral or written, have been made to Borrower to induce Borrower to enter into the Entire Agreement Documents, except as set forth therein.

**GUARANTY:** Any Co-Signer signing the guaranty of this Note agrees that all amounts owed under this Note will be paid when due. Co-Signer's obligation continues even if Borrower is released or if Lender waives or delays enforcement of any rights under this Note. Lender need not give Co-Signer notice of any such waiver, delay or release. See Notice to Co-Signer before signing this guaranty.

THIS SPACE LEFT INTENTIONALLY BLANK

Borrower's Initials
Co-Borrower's Initials

Page 7 of 10

OK Rev. 10/12/2010

**ARBITRATION:**

**A. Agreement to Arbitrate:** Borrower and Lender (sometimes called the "Parties") agree to mandatory, binding arbitration ("Arbitration") of all disputes, claims, controversies, grievances, causes of action, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, and, where applicable, administrative law claims, and any other matter in question ("Claims") arising from or relating to this Note, any products/goods, services, insurance, or real property (including improvements to the real property) sold or financed under this Note, any events leading up to this Note, the collection and servicing of this Note, and the interpretation, scope, validity or enforceability of this Note (with the exception of this agreement to arbitrate, the "Arbitration Agreement"). The interpretation, scope, validity or enforceability of this Arbitration Agreement or any clause or provision herein and the arbitrability of any issue shall be determined by a court of competent jurisdiction. Borrower and Lender agree that the scope of this Arbitration Agreement is intended to cover only Claims brought by Borrower on an individual basis and not on a representative basis as a class action, which includes similar actions that involve the aggregation of individual Claims of Borrower and other persons into a single proceeding. Notwithstanding any other provision of this Arbitration Agreement or any determination as to the enforceability of this Arbitration Agreement or the arbitrability of any Claims, Borrower and Lender expressly agree not to arbitrate any Claims as a class action. This Arbitration Agreement is the only agreement between Borrower and Lender regarding Arbitration, and takes the place of any other agreements to arbitrate. If Borrower has Claims against others (each, a "Third Party") related to or arising from facts or circumstances covered by this Arbitration Agreement (including, but not limited to (i) the design, construction and manufacture of the Manufactured Home, (ii) the advertising and the sale of the Manufactured Home, (iii) the delivery or the installation of the Manufactured Home, and (iv) insurance covering the Manufactured Home or Borrower, including title insurance, where applicable (each, a "Related Claim")), then Borrower and Lender agree to consolidate the Arbitration of Borrower's Claims against Lender, brought on an individual basis, with the Arbitration of any and all Related Claims, brought on an individual basis, into one Arbitration to be governed by this Arbitration Agreement, provided, however, that the Third Party must agree to be joined in the Arbitration of the Related Claims under this Arbitration Agreement. If any Third Party does not agree to be joined in the Arbitration of its Related Claim, then Arbitration under this Arbitration Agreement shall proceed without that Third Party. Borrower agrees not to arbitrate any Related Claims as a class action. This Arbitration Agreement also covers all co-signors and guarantors who sign this Note and any occupants of the Manufactured Home (as intended beneficiaries of this Arbitration Agreement). Borrower agrees that the Manufactured Home contains parts manufactured outside of the state where the home is sold and delivered; the manufacture, transportation, sale and use thereof has been and will continue to be regulated by the laws of the United States of America and involve and affect interstate commerce.

**B. Facts About Arbitration:** Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present evidence to the Arbitrator, both in writing and through witnesses. Arbitration proceedings are less formal than court trials. Other rights that the Parties have in court may not be available in Arbitration. The information that can be obtained in discovery from each other or from third persons in Arbitration is generally more limited than in a lawsuit. An Arbitrator will decide the case by issuing a written decision called an "award." Once confirmed, an award may be enforced as a court judgment in accordance with federal or state law. The circumstances under which a court can review an award are more limited in Arbitration.

**C. Rules:** The Arbitration shall be governed by and conducted under: (a) the Federal Arbitration Act, 9 U.S.C. §§ 1 9; (b) the arbitration rules ("Arbitration Rules") of the American Arbitration Association ("AAA") (the "Arbitration Administrator") in effect at the time Arbitration is requested, at the election of the Party filing for Arbitration; and (c) this Arbitration Agreement. A copy of the Arbitration Rules may be obtained, free of charge, from the AAA, on the Internet at www.adr.org, by calling 800-778-7879, or by writing to: American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019. If the terms of this Arbitration Agreement and the Arbitration Rules conflict, the terms of this Arbitration Agreement shall control to the extent of the conflict. The person who conducts the Arbitration (the "Arbitrator") shall have all powers provided by the Arbitration Rules and this Arbitration Agreement. After the Arbitrator is selected, the Arbitrator, in accordance with the Arbitration Rules, will set a reasonable schedule, in light of the nature and complexity of the Claims, for the Arbitration and discovery, including any depositions, the exchange of written documents, the final deadline for discovery prior to the Arbitration, and other discovery matters addressed in the Arbitration Rules. The Arbitration shall be conducted in the largest city in the federal judicial district where Borrower resides, or at any other place mutually acceptable to Borrower and Lender. At the election of either Borrower or Lender (and at the expense of the electing party), the Arbitration may be recorded and transcribed by a court reporter. Judgment upon the award rendered may be entered in any court having jurisdiction. The Parties agree that information exchanged in the Arbitration shall be held confidentially, and shall not be used in other arbitrations or court proceedings. All statutes of limitation that would otherwise apply to a Claim in a judicial action shall apply to the Arbitration of that Claim under this Arbitration Agreement. The Arbitrator shall apply applicable substantive law and shall honor claims of privilege recognized at law and consider defenses that a court could consider. The Arbitrator's decision shall be in writing, and shall include the Arbitrator's reasons for the award, including detailed findings of fact and conclusions of law. The Arbitrator may award the prevailing party in the Arbitration with that party's reasonable attorney's fees and any fees paid to commence the Arbitration, including the Arbitrator's fees, if such are available under applicable law. Any Claim or counter-claim (including compulsory or permissive under law) of a party must be made in the Arbitration, and the failure to bring such Claim or counterclaim shall constitute a waiver of and a bar to bringing such claim or counterclaim in an later Arbitration or action in court.

Borrower's Initials _____
Co-Borrower's Initials _____

OK Rev. 10/12/2010

D. Fees and Costs: The fees and costs imposed by the Arbitration Administrator associated with the Arbitration, including the Arbitrator's fees, shall be paid in accordance with the Arbitration Rules and this Arbitration Agreement. Borrower may request that the Arbitration Administrator reduce or waive Borrower's fees, or that Lender voluntarily pay an additional share of the fees and costs (however, such request does not obligate Lender to do so), based upon Borrower's financial circumstances or the nature of Borrower's Claim.

E. Class Action Waiver: Borrower waives the right to participate as a representative or member in a class action or otherwise join Borrower's Claims with those of any other person.

F. Joinder of Arbitrations: Except as provided expressly in Paragraph A. of this Arbitration Agreement with respect to the Arbitration of Borrower's individual Related Claims, Borrower and Lender agree to give up any right to consolidate or join any individual Arbitration with the Arbitration of others.

G. Exceptions: Notwithstanding any other provision of this Arbitration Agreement, Borrower agrees that Lender may use judicial process (filing a lawsuit) to: (a) enforce the security interest granted in this Note or any related mortgage or deed of trust, and (b) seek preliminary relief, such as a restraining order or injunctive relief, in order to preserve the existence, location, condition, or productive use of the Manufactured Home or other Collateral. Borrower and Lender also agree that this Arbitration Agreement does not apply to any Claim where the amount in controversy is less than the jurisdictional limit of the small claims court in the jurisdiction where Borrower resides, *provided, however,* that the Parties agree that any such small claims Claim may only be brought on an individual basis and not as a class action. Bringing a court proceeding described in this Paragraph G., however, shall not be a waiver of Lender's or Borrower's right to compel Arbitration of any other Claim that is covered by this Arbitration Agreement, including Borrower's counterclaim(s) in a suit brought by Lender. Borrower and Lender give up the right to serve as a private attorney general in any jurisdiction in which such procedure might be permitted.

H. Severability: If it is determined that any paragraph or provision in this Arbitration Agreement (other than the Class Action Waiver in Paragraph E., the agreement with respect to joinder of Arbitrations in Paragraph F., or the agreement of Borrower and Lender not to arbitrate class actions generally) is illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this Arbitration Agreement and the remainder of this Arbitration Agreement shall continue in full force and effect as if the severed paragraph or provision had not been included. Notwithstanding this severability provision or any other provision of this Note or Arbitration Agreement, if a court of competent jurisdiction finally determines the Class Action Waiver in Paragraph E., the agreement with respect to joinder of Arbitrations in Paragraph F., or the agreement of Borrower and Lender not to arbitrate class actions generally, to be illegal, invalid, or unenforceable, then the Parties agree that such waiver shall not be severed and that this Arbitration Agreement shall be void in its entirety without effect on the remainder of this Note.

I. Survival of Arbitration Agreement: This Arbitration Agreement will survive and continue in full force and effect notwithstanding rescission, cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of this Note or any other contract or transaction between the Parties, unless otherwise agreed to in writing by the Parties. In addition, Borrower understands and acknowledges that the rights afforded to Lender under this Arbitration Agreement survive any assignment of this Note by Lender and that Lender can enforce this Arbitration Agreement in the event a Claim arises after the assignment of this Note.

J. Rules of Construction: If there is a disagreement on the interpretation of this Arbitration Agreement, this Arbitration Agreement shall be construed to require Arbitration, rather than to defeat it, except for class actions, which the Parties agree not to arbitrate. Borrower and Lender waive the rule of construction that requires a tribunal to construe a vague or ambiguous provision against the drafting party.

K. Jury Waiver: Borrower and Lender hereby expressly and irrevocably waive any right to a trial by judge or jury of any Claims covered by this Arbitration Agreement. This waiver will remain enforceable even if any portion of this Arbitration Agreement is otherwise found to be unenforceable. The Parties agree that this waiver is made knowingly, willingly, and voluntarily.

L. NOTICE: BORROWER UNDERSTANDS THAT THIS ARBITRATION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT BORROWER'S LEGAL RIGHTS. BY SIGNING THIS NOTE, BORROWER ACKNOWLEDGES THAT BORROWER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS ARBITRATION AGREEMENT. IF BORROWER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS ARBITRATION AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BORROWER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE SIGNING THIS NOTE.

TO CONTACT 21ST MORTGAGE CORPORATION ABOUT THIS ACCOUNT CALL (865) 523-2120 OR 1-800-955-0021.

Borrower's Initials
Co-Borrower's Initials

OK Rev. 10/12/2010

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR (BORROWER) COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR (BORROWER) SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR (BORROWER) HEREUNDER.

**NOTICE TO THE CONSUMER**

(1) DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES; (2) YOU ARE ENTITLED TO AN EXACT COPY OF THE NOTE YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS; (3) BY SIGNING THIS NOTE, YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS NOTE; AND, (4) AT ANY TIME, YOU HAVE THE RIGHT TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS NOTE WITHOUT PENALTY.

SIGNATURE OF BORROWER(S): "Borrower" refers to all persons who sign this Note as "Borrower" and "Co-Borrower", jointly and severally. Borrower's signature(s) below indicates the following: 1) Borrower has fully and completely read all of this Note; 2) Borrower has consulted independent legal counsel to clarify any matters, if Borrower deemed such was necessary; 3) Borrower has no questions regarding any matters contained in this Note and understands all terms, conditions and obligations set forth in this Note; and, 4) Borrower agrees to fully satisfy and abide by all terms, conditions and obligations set forth in this Note.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

_____   6/8/2012
CHRISTOPHER B TORRES (Borrower)    Date

_____   6/8/12
SHELLY L TORRES (Co-Borrower)      Date

SIGNATURE OF GUARANTOR(S): The undersigned, jointly and severally, agree(s) to pay all amounts due on this Note until all amounts due on this Note are paid in full. The undersigned also agree(s) to all the terms and conditions of this Note.

_____   _____
(Co-Signer)                        Date

_____   _____
(Co-Signer)                        Date

NOT VALID UNLESS ACCEPTED BY LENDER: _____
                                     21ST MORTGAGE CORPORATION

                                     By: Nicole Thomas    LP        6/14/12
                                         Printed Name     Title     Date

Initialing below is not necessary. Borrower(s) should sign above.

Borrower's Initials _CB_
Co-Borrower's Initials _SLT_



OKLAHOMA TAX COMMISSION
MOTOR VEHICLE DIVISION
POST OFFICE BOX 269061
OKLAHOMA CITY, OKLAHOMA 73126

## LIEN ENTRY FORM



Debtor Names and Address (Last Name First)

TORRES CHRISTOPHER B / SHELLY L
Name(s)

12116 SKYWAY AVE
Address

OKLAHOMA CITY  OK
City, State

73162
Zip Code

21ST MORTGAGE CORP
Secured Party Name

PO BOX 477
Address

KNOXVILLE  TN
City, State

37901
Zip Code

Assignee of Secured Party Name

Address

City, State

Zip Code

### THIS LIEN ENTRY FORM COVERS THE FOLLOWING VEHICLE

| 2012 | FLTWD | MH | FLE240TX1230686A |
|---|---|---|---|
| Year | Make | Body Type | Vehicle Identification Number (VIN/HIN) |

7-2-2012
Date of Security Agreement

727512184022
Original Oklahoma Title Number

Secured Party / Assignee Signature

7-2-2012
Date Executed

Lender must type and print four (4) identical copies of the Lien Entry Form. Type one Lien Entry Form for each vehicle, boat or outboard motor.

One (1) copy to the Oklahoma Tax Commission, one (1) copy to the motor license agent, one (1) copy to the secured party or assignee, one (1) copy attached to the title documents to be given to the debtor.

Notice to Debtor: Oklahoma law requires a new owner to title and register his/her vehicle and pay all taxes and fees due within 30 days of acquiring ownership.

# OKLAHOMA TAX COMMISSION

LIEN RECEIPT

```
                                              1218472275A4038
                                          PYMT TYPE: CASH

VIN: FLE240TX1230686A   VEHYR: 2012
                        MAKE  :
                        MODEL :
                        BODY  :

              LIEN DATE: 07/02/2012    AGNT #: 7275
              LIEN TIME: 10:00         DATE: 07/02/2012
                                       REF#: 1218472275A4038

                                       LIEN FEE:      10.00

LIEN
DEBTOR: TORRES CHRISTOPHER B/SHELLY L

        21ST MORTGAGE CORP

        PO BOX 477
        KNOXVILLE          TN  37901

                                       TOTAL:         10.00
                                                      COPY 3
```

```
Label Matrix for local noticing        Synchrony Bank                          USBC Western District of Oklahoma
1087-5                                 c/o PRA Receivables Management, LLC     215 Dean A. McGee
Case 19-15022                          PO Box 41021                            Oklahoma City, OK 73102-3426
Western District of Oklahoma           Norfolk, VA 23541-1021
Oklahoma City
Fri Feb 28 15:22:44 CST 2020

21ST MORTGAGE CORP                     (p)21ST MORTGAGE CORPORATION            ACCT MGMT RESOURCES LL
620 MARKET ST STE 100                  PO BOX 477                              726 W SHERIDAN AVE
KNOXVILLE TN 37902-2207                KNOXVILLE TN 37901-0477                 OKLAHOMA CITY OK 73102-2412


AD ASTRA RECOVERY SERV                 AFNI INC                                AMERICAN COLLECTION SE
7330 W 33RD ST N STE 118               PO BOX 3097                             3100 SW 59TH ST
WICHITA KS 67205-9370                  BLOOMINGTON IL 61702-3097               OKLAHOMA CITY OK 73119-6416


APPLIED CARD                           ARS ACCOUNT RESOLUTION                  AmeriCredit Financial Services, Inc. dba GM
LOVE BEAL  NIXON PC                    1643 NW 136TH AVE STE 10                P O Box 183853
PO BOX 32738                           SUNRISE FL 33323-2857                   Arlington, TX 76096-3853
OKLAHOMA CITY OK 73123-0938


Approved Cash                          Ashley Funding Services, LLC            Atlas Acquisitions LLC
4423 NW 63rd Street                    Resurgent Capital Services              294 Union St.
Oklahoma City, OK 73116-1508           PO Box 10587                            Hackensack, NJ 07601-4303
                                       Greenville, SC 29603-0587


BURT A CHAPPELL DC                     (p)CAPITAL ONE                          CAPITAL ONE
305 N BROADWAY                         PO BOX 30285                            11013 W BROAD ST
EDMOND OK 73034-3681                   SALT LAKE CITY UT 84130-0285            GLEN ALLEN VA 23060-6017


CARFINANCE CAPITAL                     (p)SOUTHERN MANAGEMENT                  COVINGTON CREDITSMC
PO BOX 3807                            PO BOX 1947                             1501 S SUNNYLANE RD STE
COPPELL, TX 75019-5877                 GREENVILLE SC 29602-1947                DEL CITY OK 73115-3035


CREDIT SERVI                           Cavalry SPV I, LLC                      Citizens Bank N.A.
POB 60566                              500 Summit Lake Drive, Ste 400          One Citizens Bank Way Mailstop JCA115
OKLAHOMA CITY OK 73146-0566            Valhalla, NY 10595-2321                 Johnston, RI 02919-1922


ENHANCED RECOVERY CO L                 FIRST FIDELITY BANK NA                  FIRST UNITED BANK  TRUST
8014 BAYBERRY RD                       STEPHEN BRUCE  ASSOCS                   1400 W MAIN
JACKSONVILLE FL 32256-7412             PO BOX 808                              DURANT OK 74701-4906
                                       EDMOND OK 73083-0808


FIRST UNITED BANK  TRUST               FIRST UNITED BANK  TRUSTMADILL COMMUNITY BA   FLAGSHIP CREDIT ACCEPT
CO ALEX M SHARP BAER  TIMBERLAKE PC    CO BILL C LESTER                        3 CHRISTY DR STE 201
PO BOX 18486                           PO BOX 1407                             CHADDS FORD PA 19317-9670
OKLAHOMA CITY OK 73154-0486            PURCELL OK 73080-1407
```

| | | |
|---|---|---|
| First United Bank & Trust Company<br>c/o Riley Nix-Nix Law Firm<br>717 N Corckett St<br>Sherman TX 75090-4979 | GM FINANCIAL<br>PO BOX 181145<br>ARLINGTON TX 76096-1145 | GRT PLAIN NB<br>POB 473<br>HOLLIS OK 73550-0473 |
| Great Plains National Bank<br>c/o Daniel V. Carsey<br>100 N. Broadway, Suite 2900<br>Oklahoma City, OK 73102-8865 | HUNTER WARFIELD<br>4620 WOODLAND CORPORATE<br>TAMPA FL 33614-2415 | JANA FERRELL ASSOCS<br>4101 PERIMETER CENTER 210<br>OKLAHOMA CITY OK 73112-2309 |
| JEFFREY L WATTS MD<br>SW REGIONAL IMAGING  RADIOLOGY LLC<br>PO BOX 12982<br>OKLAHOMA CITY OK 73157-2982 | JENNIE BRADY<br>7218 SKY LARK CT<br>OKLAHOMA CITY OK 73162-5630 | KIM KING DO PLLC<br>3212 SW 89TH ST STE 200<br>OKLAHOMA CITY OK 73159-7957 |
| MEGAN M MASSOTH<br>2208 NW 29TH ST<br>OKLAHOMA CITY OK 73107-2528 | MERRICK<br>55 EAST AMES CT<br>PLAINVIEW NY 11803-2304 | MERRICK BANK<br>Resurgent Capital Services<br>PO Box 10368<br>Greenville, SC 29603-0368 |
| MIDLAND CREDIT MNGMT<br>320 E BIG BEAVER RD STE<br>TROY MI 48083-1271 | MIDLAND FUNDING LLC<br>LOVE BEAL  NIXON PC<br>PO BOX 32738<br>OKLAHOMA CITY OK 73123-0938 | MIDWEST RCVRY<br>514 EARTH CITY PLAZA SUITE 100<br>EARTH CITY MO 63045-1303 |
| Midland Credit Management, Inc.<br>PO Box 2037<br>Warren, MI 48090-2037 | (p)OKLAHOMA TAX COMMISSION<br>GENERAL COUNSEL S OFFICE<br>100 N BROADWAY AVE SUITE 1500<br>OKLAHOMA CITY OK 73102-8601 | PRA Receivables Management, LLC<br>PO Box 41021<br>Norfolk, VA 23541-1021 |
| Pendrick Capital Partners, LLC<br>Peritus Portfolio Services II, LLC<br>PO BOX 141419<br>IRVING, TX  75014-1419 | Quantum3 Group LLC as agent for<br>Global Trust Management LLC<br>PO Box 788<br>Kirkland, WA  98083-0788 | REC MGT CORP<br>1601 SHOP RD SUITE D<br>COLUMBIA SC 29201-4855 |
| RICHARD CROOK MD<br>ACCIDENT CARE  TREATMENT CTR<br>3209 NW EXPRESSWAY<br>OKLAHOMA CITY OK 73112-4131 | ROBERT D BOGGS DC<br>BOGGS CHIROPRACTIC<br>12316 N MAY AVE STE B<br>OKLAHOMA CITY OK 73120-1944 | SCOTT A MITCHELL DO<br>3601 NW 138TH ST STE 200<br>OKLAHOMA CITY OK 73134-2513 |
| SCOTT A MITCHELL DO<br>4131 NW 122ND STE 100<br>OKLAHOMA CITY OK 73120-8869 | SPEC LOAN SV<br>8742 LUCENT BLVD 300<br>HIGHLANDS RANC CO 80129-2386 | TAB SERVICES<br>2448 E 81ST ST STE 4700<br>TULSA OK 74137-4293 |
| Tea Olive, LLC<br>PO BOX 1931<br>Burlingame, CA 94011-1931 | U.S. Bank National Association Trustee (See<br>c/o Specialized Loan Servicing LLC<br>8742 Lucent Blvd, Suite 300<br>Highlands Ranch, Colorado 80129-2386 | United States Trustee<br>United States Trustee<br>215 Dean A. McGee Ave., 4th Floor<br>Oklahoma City, OK 73102-3479 |

| | | |
|---|---|---|
| Cecil W Heaton<br>Heaton Law Firm<br>2 E 11th Suite #112<br>Edmond, OK 73034-3990 | John T. Hardeman<br>PO Box 1948<br>Oklahoma City, OK 73101-1948 | Shelly LeAnn Torres<br>12116 Skyway Avenue<br>Oklahoma City, OK 73162-1001 |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| 21st Mortgage Corporation<br>P.O. Box 477<br>Knoxville TN 37901 | CAP ONE<br>PO BOX 85015<br>RICHMOND VA 232855075 | COVINGTON CREDIT OK0014<br>ATTN BK<br>PO BOX 1947<br>GREENVILLE, SC 29602 |

OKLAHOMA TAX COMMISSION
PO BOX 26800
OKLAHOMA CITY OK 731260800


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Specialized Loan Servicing, LLC as service | (u)JENNIE BRADY | (u)MEGAN M MASSOTH |


| | | |
|---|---|---|
| (d)Oklahoma Tax Commission<br>General Counsel's Office<br>100 N. Broadway Ave., Suite 1500<br>Oklahoma City, OK 73102-8601 | End of Label Matrix<br>Mailable recipients   62<br>Bypassed recipients    4<br>Total                 66 | |